# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LANIER BROWN, # 433-019, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-16-3995 |
| OFFICER MATTHEW MYERS,[1] | * | |
| Defendant | * | |
| | *** | |

## MEMORANDUM OPINION

This case arises from Plaintiff Lanier Brown having been bitten by a police dog during his arrest. Plaintiff files suit pursuant to 42 U.S.C. § 1983, alleging excessive use of force in violation of the Fourth Amendment of the United States Constitution and failure to provide adequate medical treatment following that arrest in violation of the Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff seeks $10 million in damages. ECF No. 1 at 1. Defendant Matthew Myers moves to dismiss the Complaint, or in the alternative, for summary judgment (ECF No. 11-1), which is opposed by Brown. ECF No. 15. The Court has reviewed the submissions and finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2016). Because Defendant seeks this Court's review of materials outside of the Complaint, his motion will be treated as one for summary judgment. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *see also* Fed. R. Civ. P. 12(d) and 56. For the reasons set forth below, Myers' Motion IS DENIED. Further, the Court will appoint Pro Bono counsel to represent Brown for all purposes going forward, including amendment of the pleadings, discovery and trial.

---

[1] The Clerk shall amend the docket to reflect the full spelling of Officer Myers' name.

## I. Background

The following facts are undisputed. On April 28, 2014, at approximately 4:08 PM, Officer Myers, Officer Tracy Ather and other Baltimore County police officers responded to a report of a burglary in progress at 205 East Cherry Hill Road in Reisterstown, Maryland. (ECF No. 1, p. 3; ECF No. 11-1).[2] Witnesses claim to have seen Brown run toward Mardan Drive and attempt to conceal a television inside a book bag. Brown then abandoned the items and continued to flee. K-9 Officer, Derek W. Clark, arrived on the scene with his K-9 partner "Justice" and joined the search for Brown. (*Id.,* p. 6). A helicopter pilot observed Brown enter a residence located at 231 Parkholme Circle through the rear patio door. (ECF No. 1, p. 3). Clark and Justice responded to 231 Parkholme Circle with other officers and began to search the residence. (ECF No. 11-1, p. 6).

What happened during the search, however, is a matter hotly disputed by the parties. Defendant submits the sworn affidavit of Officer Clark who claims that he opened the sliding glass door and gave three loud K-9 warnings, but upon hearing no response, deployed Justice. (ECF No. 11-7, ¶ 11). Clark then heard Brown scream and shout "I give up." Clark entered the living room, and saw Justice biting and holding Brown's left arm. Brown then released a door knob with his right hand, and according to Clark, raised his clenched fist as if to strike Justice. (*Id.,* ¶¶ 13-15). Other officers immediately grabbed Brown's right arm, forced him to the ground. Justice, still latched onto Brown's left arm, had to be forcibly removed from Brown by Clark exerting pressure on the dog's neck. Clark attests that this method of release allows the officer to control the dog and reduce the risk that others in the vicinity may be bitten. (*Id.,* ¶ 18).

---

[2] Brown was charged with numerous counts of burglary and theft. On November 13, 2014, he pleaded guilty in Baltimore County Circuit Court to two counts of first-degree burglary, and was sentenced to eight years of incarceration. (ECF No. 11-4, p. 4). *See State of Maryland v. Brown,* Crim. No. 03K14002630, http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?

Defendant further asserts that Brown received medical treatment from desk officers at the precinct for puncture wounds to the left arm and right hand.[3] (ECF No. 11-1, p. 5). According to Clark, Brown refused further treatment. (*Id.,* p. 6; ECF No. 11-7, ¶ 21). K-9 Commander Lt. Joseph Peach met Clark at the Precinct and interviewed Brown in Clark's presence. (*Id.,* ¶ 22). In a subsequent interview with burglary Detectives Gene Pryor and Robert Inge, Brown again declined medical treatment for the dog bites and stated that he was "okay" and "fine." (ECF No. 11-1, p. 8).

Brown, by contrast, attests to a very different series of events. Brown asserts that while in the residence, the officers never warned him that he should surrender or Justice would be deployed. ECF No. 15. Brown also disputes that he refused medical treatment, but instead states that he was discouraged from seeking further treatment. *Id.* p. 4; ECF No. 15-1). Brown claims to have suffered permanent physical injuries from the dog bites, including limited strength and mobility in his arm, slight uncontrolled shaking of the arm, tingling, numbness, and aching. (ECF No. 15, p. 9). In addition to alleging excessive force claims against the individual officers, Brown also argues that Baltimore County has failed to properly train its K-9 officers (*id.,* p. 13), and suggests municipal authorities are to blame. (*Id.,* pp. 13-14).

## II. STANDARD OF REVIEW

When a district court treats a motion to dismiss as one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. *Id.* Where the nonmoving party attaches exhibits to its opposition, the Court may treat the nonmoving party as having availed himself of the reasonable opportunity to present materials pertinent to the motion and proceed to summary judgment. *See Laughlin v. Metropolitan Wash. Airports. Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998). The Court will do so here.

---

[3] The Baltimore County Health Department was notified of the bite later that day. (ECF No. 11-7, ¶ 21).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that no genuine dispute of material fact exists. *Pulliam Inv., Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir. 2011) (internal quotation marks omitted). A dispute of material fact is only genuine if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Id.* at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex,* 477 U.S. at 324-25). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Because Brown is self-represented, his submissions are liberally construed. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

### III. ANALYSIS

Claims of excessive force during arrest are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U. S. 386, 395 (1989). "The right to make an arrest carries with it the right to use the amount of force that a reasonable officer

would think necessary to take the person being arrested into custody." *See Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988) (citing *Lester v. Chicago*, 830 F.2d 706, 712 (7th Cir. 1987)). This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted). Factors to be considered are the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene." *Id.* at 387.

Here, genuine issues of material fact as to whether the officers were "objectively reasonable" in deploying K-9 Justice preclude summary judgment. The parties dispute whether Brown was given notice and an opportunity to surrender prior to Justice being let loose in the residence. Additionally, no discovery has been taken regarding police K-9 practices and training by which to assess whether the Defendant and other officers behaved in an objectively reasonable manner.

Likewise with regard to Plaintiff's claims of receiving constitutionally inadequate medical treatment, genuine issues of disputed fact bar summary judgment. Defendant mainly contends that Brown has put forth no evidence to support that Brown was treated with "deliberate indifference." The Court disagrees. Brown attests that his wounds were serious enough to have sustained permanent physical impairment. The parties also do not dispute that K-9 Justice bit and held his right arm with sufficient force that the officer had to manually remove the dog from Brown's arm. Construing these facts in the light most favorable to Brown, this Court cannot find without further factual development that officers provided constitutionally sufficient medical treatment for wounds sustained in the manner described above, let alone

determine whether the officers acted with deliberate indifference to Brown's medical needs.[4]

Myers lastly argues that he is entitled to qualified immunity. ECF No. 11-1, p. 14. Plaintiff has properly alleged that officers used excessive use of force via unannounced deployment of a police K-9, which if true, has been clearly established as a violation of the Fourth Amendment right to be free from excessive force. *See Kopf v. Wing, et al.*, 942 F.2d 265, 268 (4th Cir. 1991) ("release of a dog without allowing time for the suspects to give up, especially where the suspects were cornered and escape impossible, was unreasonable."); *Vathekan v. Prince George's County,* 154 F.3d 173, 179 (4th Cir. 1998) (clearly established that "failure to give a warning before releasing a police dog is objectively unreasonable in an excessive force context."). Although Myers was not K-9 Justice's handler, his role in Brown's arrest is not fully developed. Accordingly, Myers' invocation of qualified immunity as an affirmative defense cannot be decided without further factual development.

For these reasons, Myers' motion for summary judgment is denied. The Court also appoints Pro Bono counsel to represent Brown for all purposes, including amendment of the Complaint, discovery, and trial.

A separate Order will follow.

Date: 11/13/17                                                                 /S/
                                                                               Paula Xinis
                                                                               United States District Judge

---

[4] The Court has also recently granted Brown's request to add parties to the Complaint, which requires further factual development as to their roles in this incident.